# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### Eastern Division

**C.A. No. 04-12386-NMG**

| | |
|---|---|
| **RCN-BecoCom, LLC,** | |
| **Plaintiff,** | **ANSWER, COUNTERCLAIM AND JURY DEMAND** |
| **v.** | |
| **Town of Wakefield,** | |
| **Defendant.** | |

The defendant and plaintiff-in-counterclaim Town of Wakefield, Massachusetts (the "Town") hereby respectfully submits its Answer to the Complaint filed by the plaintiff and defendant-in-counterclaim RCN-BecoCom, LLC ("RCN"), the Town's Counterclaim against RCN for breach of contract and declaratory relief, and the Town's demand for a trial by jury as to any and all issues so triable.

### ANSWER

For its Answer, the Town represents as follows:

<u>First Defense</u>

The Complaint fails to state a claim upon which relief can be granted.

<u>Second Defense</u>

With respect to the factual allegations set forth in the numbered paragraphs of the Complaint, the Town answers as follows:

1.   The Town admits the allegations set forth in paragraph 1 of the Complaint.

2.   The Town admits the allegations set forth in paragraph 2 of the Complaint.

3.     The Town admits the allegations set forth in paragraph 3 of the Complaint.

4.     The Town is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 4 of the Complaint.

5.     The Town admits the allegations set forth in paragraph 5 of the Complaint.

6.     The Town admits the allegations set forth in paragraph 6 of the Complaint.

7.     The Town admits the allegations set forth in paragraph 7 of the Complaint.

8.     The Town is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 8 of the Complaint.

9.     The Town denies that it ever became commercially impracticable for RCN to satisfy the requirement in the License that RCN make cable services available to all residential dwellings in Wakefield, and is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 9 of the Complaint.

10.    The Town admits the allegations set forth in paragraph 10 of the Complaint.

11.    The Town is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 11 of the Complaint.

12.    The Town answers that by letter dated January 16, 2003 it gave notice to RCN pursuant to § 8(a) of the License that the Town had grounds to believe that RCN had defaulted in performance of certain obligations under the License, including failure to construct the cable system fully, failure to offer cable services to all residential dwellings within the Town, failure to complete the so-called "I-Net", and failure to

2

provide a performance bond. The Town otherwise denies the allegations set forth in paragraph 12 of the Complaint.

13.    The Town answers that it discussed RCN's concerns in good faith, voted not to hold RCN in default for its failure to complete the I-Net, but refused to agree that more than 900 families within the Town should be denied the right of cable access available to all other residents and guaranteed to all residents by the License. The Town otherwise denies the allegations set forth in paragraph 13 of the Complaint.

14.    The Town admits that at the hearing of November 24, 2003 RCN made the representations set forth in paragraph 14 of the Complaint; is without knowledge or information sufficient to form a belief as to the truth of those representations; and specifically denies that it would have been prohibitively expensive or uneconomic under then-current market conditions for RCN to have fulfilled its obligation under the License to make cable services available to all residential dwellings within the Town.

15.    The Town admits the allegations set forth in paragraph 15 of the Complaint.

16.    The Town admits the allegations set forth in paragraph 16 of the Complaint.

17.    The statements set forth in paragraph 17 of the Complaint constitute legal assertions and not factual allegations, and as such require no response. To whatever extent the statements set forth in the said paragraph may be deemed to require a response, the Town denies those statements.

18.    The Town answers that the statute quoted in paragraph 18 of the Complaint speaks for itself.

3

19.     The Town admits that at the hearing of March 22, 2004, RCN made the representations set forth in paragraph 19 of the Complaint, and is without knowledge or information sufficient to form a belief as to the truth of those representations.

20.     The Town admits that at the hearing of March 22, 2004, RCN made the representations set forth in paragraph 20 of the Complaint, and is without knowledge or information sufficient to form a belief as to the truth of most of those representations. The Town is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the final sentence of paragraph 20 of the Complaint, and denies that RCN suffered or currently suffers any "competitive disadvantage" as a result of any actual or threatened competition of the kind described in the said paragraph.

21.     The Town admits the allegations set forth in paragraph 21 of the Complaint.

22.     The Town answers that the statute quoted from in paragraph 22 of the Complaint speaks for itself.

23.     The Town answers that the statute quoted in paragraph 23 of the Complaint speaks for itself.

24.     The Town answers that the statute quoted in paragraph 24 of the Complaint speaks for itself.

25.     The Town admits that this Court has authority to hear this case.

26.     The Town denies the allegations set forth in paragraph 26 of the Complaint.

4

27.    The Town is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 27 of the Complaint, and specifically denies the relevance of the allegations even if true.

28.    The Town denies the allegations set forth in paragraph 28 of the Complaint.

<u>Third Defense</u>

The Complaint is barred by the applicable statute of limitations.

<u>Fourth Defense</u>

RCN is estopped by its words and conduct from seeking the relief sought in the Complaint.

<u>Fifth Defense</u>

By its words and conduct RCN has waived any claim to the relief sought in the Complaint.

<u>Sixth Defense</u>

RCN is barred from relying on the contentions set forth in paragraph 20 of the Complaint by its failure to assert such contentions in its petition for modification and by RCN's failure to assert at the hearing on such petition any evidence of actual, as opposed to possible future, competition or competitive disadvantage.

<u>Seventh Defense</u>

The Complaint is barred, in whole or in part, by RCN's failure to exhaust its administrative remedies.  Without limiting the generality of the foregoing, the Town avers that the failure of RCN to provide evidence to the Town of actual, as opposed to

possible future, competition or competitive disadvantage bars RCN from seeking relief from this Court on the basis of such competition or competitive disadvantage.

<u>Eighth Defense</u>

The Complaint is barred, in whole or in part, because the claims asserted therein are not ripe for adjudication. Without limiting the generality of the foregoing, the Town avers that by presenting mere speculation to the Town concerning the possibility of future competition, at a time when no such competition existed, and appealing from the Town's denial of relief on the basis of that speculative argument, RCN presents an issue to this Court which is premature and not ripe for adjudication.

## **COUNTERCLAIM**

The plaintiff-in-counterclaim Town of Wakefield (the "Town") hereby respectfully submits its Counterclaim against the defendant-in-counterclaim RCN-BecoCom, LLC ("RCN").

<u>Jurisdiction and Venue</u>

1.     This Court has supplemental jurisdiction over the Town's Counterclaim under 28 U.S.C. § 1367.

2.     Venue is proper in this Court under 28 U.S.C. § 1391(b) in that the Town and RCN are located within this District.

<u>Parties</u>

3.     The plaintiff-in-counterclaim Town is a Massachusetts municipal corporation having a usual place of business at 1 Lafayette Street, Wakefield, Massachusetts.

6

4.     The defendant-in-counterclaim RCN is a Massachusetts limited liability company having a usual place of business in Somerville, Massachusetts.

<u>Factual Allegations</u>

5.     On March 9, 1999, the Town granted to RCN a final cable television license (the "License") conferring on RCN a local franchise to construct and operate a cable television system within the Town. A true copy of the License is attached hereto as Exhibit "A".

6.     Under § 3(a) of the License, RCN had eighteen (18) months to construct its system and an additional three (3) months to offer cable services to all residential dwellings within the Town. This twenty-one (21) month period began to run once all necessary permits and approvals were granted by the Wakefield Municipal Gas and Light Department. These permits were secured on July 10, 2000; thus the deadline under the License to provide service to all residential dwellings within the Town was April 10, 2002.

7.     On January 16, 2003, the Town gave written notice to RCN under § 8(a) of the License that the Town had grounds to believe that RCN had defaulted in the performance of its obligations under the License. In that same document, the Town demanded performance of all such obligations.

8.     Among the defaults identified by the Town in its January 16, 2003 notice was RCN's failure to complete construction of the system and to offer cable services to all residential dwellings by the deadline of April 10, 2002. The Town noted that at the time of the said notice, more than nine months after the deadline, RCN had failed to make cable service available to more than 1,000 homes within the Town.

9.      Despite RCN's failure to cure the defaults noted in its said notice within thirty (30) days after receipt thereof, as required under § 8(a)(2) of the License, the Town deferred taking action against RCN in order to give RCN a greater opportunity to fulfill its contractual obligations.

10.      On November 3, 2003, the Town gave written notice to RCN under § 8(b) of the License that the Town, through its Board of Selectmen, would conduct a hearing to determine whether RCN was in default.  Among the issues specifically cited in that notice was to determine whether RCN had failed, in violation of § 3(a) of the License, (a) to construct its system fully and (b) to offer cable services to all residential dwellings within the Town.

11.      The Town, through its Board of Selectmen, conducted a hearing on November 24, 2003 to determine whether RCN was in default.

12.      At that hearing, RCN explained that it had plans to reduce from 1,815 to 932 the number of "non-install-ready addresses", meaning residential dwellings to which cable services could not be offered.  RCN stated that it had no plans for reaching those 932 dwellings.

13.      The Town, through its Selectmen, found the following as a result of the hearing conducted on November 24, 2003:

    a.      almost 20 months after RCN's cable services should have been made available to all residences in the Town, (a) the residents at more than 18% of addresses in the Town were unable to access RCN's services, and (b) more than 9% of the residential addresses in the Town would remain inaccessible even if RCN accomplished all of its planned construction;

8

b.    the expense of reaching the last 9% of residential addresses within the Town was a foreseeable expense at the time the License was negotiated and issued;

c.    any hardship that may have existed had been amply ameliorated by the patience which the Town had shown in staying its hand for more than a year and a half after the deadline set forth in the License; had RCN seriously devoted itself to reaching all of the residential addresses in Town, it would have had plenty of time to spread out the cost of doing so;

d.    RCN continued to expand its service elsewhere even as it asserted an inability to meet its pre-existing contractual obligations to the Town; more than four and half years after issuance of the License, RCN had undertaken to build a cable television system in the neighboring Town of Stoneham while more than 18% of the homes in Wakefield remained unable to receive RCN's services;

e.    the Town had a duty to provide a "level playing field" for RCN and its competitor within the Town, Comcast; if the Town waived material terms of the License for the benefit of RCN, corresponding concessions would likely be sought by the Town's other cable licensee; and

f.    those who lived at the 9% of addresses which RCN proposed never to reach were no less deserving than the people who lived at the remaining 91%; the Town could not abandon any residents but rather had to insist that the bargained-for benefits of the License be extended to all.

14.    On December 8, 2003 the Town, through its Board of Selectmen issued a written decision determining RCN to be in default under § 3(a) of the License (the

9

"Decision"). A true copy of the Decision is attached hereto as Exhibit "B". The Town

sent a copy of the Decision to RCN by certified mail on December 10, 2003.

15. As of the date hereof, RCN still has not completed construction of its

system in such a way as to offer cable service to any of the 932 dwellings to which it has

proposed to deny service.

Count I

Breach of Contract -- Specific Performance

16. The Town hereby repeats and re-alleges each and all of the averments set

forth above as if fully set forth herein.

17. The License constitutes a contract between the Town and RCN.

18. Among the obligations undertaken by RCN in the License is to construct

its system in such a way as to offer cable services to all residential dwellings within the

Town by April 10, 2002.

19. RCN has failed and refused to complete its system and to offer cable

services to all residential dwellings within the Town, despite repeated demands by the

Town.

20. The Town has suffered damage as a result of the breach by RCN of its

obligations under the License.

21. Damages are not adequate to compensate the Town for RCN's breach of

contract. The Town has no adequate remedy at law.

22. The Town is entitled to an order of this Court specifically enforcing

RCN's obligations under § 3(a) of the License, requiring that RCN forthwith undertake to

10

complete its cable system in such a way as to offer cable services to all of the residential dwellings within the Town.

Count II
Breach of Contract -- Damages

23.     The Town hereby repeats and re-alleges each and all of the averments set forth above as if fully set forth herein.

24.     The Town has suffered and will suffer damage as a result of RCN's breach of its obligations under the License including, without limitation, the cost to the Town of excavation and other work necessary to make RCN's cable services available to all residential dwellings within the Town in the event this Court chooses not to order specific performance on the part of RCN.

25.     The Town is entitled to recover damages from RCN in an amount to be determined by the jury, together with interest, costs of suit and reasonable attorneys' fees.

Count III
Declaratory Judgment

26.     The Town hereby repeats and re-alleges each and all of the averments set forth above as if fully set forth herein.

27.     RCN has provided the Town with (a) a performance bond in the amount of $100,000 pursuant to § 7 of the License and M.G.L. c. 166A, §5(k) and (b) a renewable letter of credit in the amount of $10,000 pursuant to § 9(a) of the License.

28.     Despite the determination of RCN's default set forth in the Decision (Exhibit "B"), the Town has forborne from exercising its rights under the performance bond and the letter of credit because of the pendency of RCN's petition for modification of the terms of the License under 47 U.S.C. § 545.

11

29.     The Town seeks a declaratory judgment pursuant to 28 U.S.C. § 2201, et seq. that RCN's petition for modification is not a bar to the Town's exercise of its rights under the performance bond and the letter of credit.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b) and all other applicable law, the Town hereby respectfully demands a trial by jury as to all issues so triable.

**WHEREFORE,** the Town prays that this Honorable Court enter judgment as follows:

1.     Dismissing RCN's Complaint, or in the alternative entering a declaratory judgment in response thereto denying RCN's requested modification of the License;

2.     For the Town and against RCN on Count I of the Town's Counterclaim, entering an order requiring specific performance by RCN of its obligations under § 3(a) of the License to complete construction of RCN's system in such a way as to offer cable services to all residential dwellings within the Town;

3.     For the Town and against RCN on Count II of the Town's Counterclaim, in an amount to be determined by the jury, together with interest;

4.     For the Town and against RCN on Count III of the Town's Counterclaim, entering a declaratory judgment that RCN's petition for modification is not a bar to the Town's exercise of its rights under the performance bond and the letter of credit;

5.     Awarding the Town its costs of defense with respect to the Complaint, costs of suit with respect to the Counterclaim, and reasonable attorneys' fees; and

6.     Granting such other and further relief to the Town as may be just and appropriate.

12

TOWN OF WAKEFIELD
By its attorney,


Thomas A. Mullen
545 Salem Street
Wakefield, Massachusetts 01880
(781) 245-2284
BBO No. 360315

Date: December 9, 2004

## Certificate of Service

The undersigned hereby certifies that he caused a true copy of the foregoing document to be served this day, December 9, 2004, by first class mail, postage paid, on all counsel of record and on all parties appearing pro se.

Thomas A. Mullen

c:\Wakefield\RCNAnswer

13

# CABLE TELEVISION
# FINAL LICENSE

## GRANTED TO
## RCN-BECOCOM, L.L.C.

### MARCH 9, 1999

## BOARD OF SELECTMAN

## TOWN OF WAKEFIELD

## MASSACHUSETTS

# TABLE OF CONTENTS

| | |
|---|---|
| Grant of License | 3 |
| Non-Exclusivity of License | 3 |
| System Technology | 4 |
| Public, Education and Government Access Programming | 5 |
| Local Business Office | 9 |
| Indemnification | 9 |
| Performance Bond | 10 |
| Determination of Breach | 10 |
| Letter of Credit | 12 |
| Proceedings Upon Expiration or Revocation of License | 12 |
| Term | 13 |
| Exhibit 1: I-Net Drops and Outlets | 14 |
| Exhibit 2: Agreement By and Among Wakefield Community Access Television | 15 |

## LICENSE PROVISION

1.   **Grant of License.**

The Board of Selectmen of the Town of Wakefield, Massachusetts (the "Issuing

Authority") hereby grants to RCN-BecoCom, L.L.C. (the "Licensee") a license to

construct, own, operate, extend and maintain a cable television and cable communications

system (the "License") within the Town of Wakefield (the "Town"). This License is

granted pursuant to applicable state and federal law, and incorporates the present terms of

such law and such terms as they are amended from time to time during the License term.

2.   **Non-Exclusivity of License.**

(a)     This License is non-exclusive.

(b)     To the extent allowed by applicable law(s), any additional cable television

license(s) shall be granted in the form and substance of this License. This paragraph shall

be subject to specific performance.

(c)     In the event Licensee reports to the Issuing Authority that it is at a

competitive disadvantage as a result of a competing multi-channel video programmer

operating in the Town, not currently required to be licensed by the Issuing Authority, the

Issuing Authority and the Licensee agree that 47 U.S.C. § 545 will be applicable. Among

other factors, the Issuing Authority will consider the nature and extent of any such

competitive disadvantage in assessing a request for modification from the Licensee

pursuant to such provision. The Issuing Authority and the Licensee agree that the specific

kinds of potential competing multi-channel video programmer(s) or the terms and

3

conditions of any such potential competition that may occur, are unforeseeable as of the date of the execution of this License.

3.    **System Technology**.

(a)    The Licensee shall have a period of eighteen (18) months in which to construct a modern residential cable television system with a capacity of not less than 750 megahertz and an additional three (3) months to offer cable service to any residential dwelling in the Town (the "System"). Said period shall commence when all necessary permits and approvals are granted by the Wakefield Municipal Light Plant which shall be expeditiously sought by the Licensee.

(b)    The Licensee's System or separate institutional network (the "I-Net") shall be capable of transmitting to the Town, audio, video and data to the sites listed in Exhibit 1. The designation of these sites may be reasonably changed by the Issuing Authority prior to construction. Additional sites will be added, at a cost with a reasonable rate of return, upon the request of the Issuing Authority. Licensee shall designate six (6) upstream and six (6) downstream channels on the I-Net for use by the Town or its designee. Any use by the Town of the I-Net or subscriber network ("Subscriber Network") for audio, video or data transmission shall be for non-commercial educational and governmental purposes and public, educational and governmental access programming. Except with the written permission of the Licensee, such transmission facilities may not be used to transmit or receive any form of communication (whether audio, video, data, voice or otherwise) that the Licensee is, or becomes, in the business of transmitting, nor extended to additional sites.

4

(c)    The Licensee's System shall provide capacity for cable services interconnected with cable television systems in towns abutting the Town and meeting the following criteria: (1) where the costs of such interconnection are commercially reasonable and Licensee's costs of such interconnection may be passed through to subscribers according to applicable law; and (2) where such other system is: (a) obligated by local issuing authorities to provide equivalent interconnection; (b) agrees to share equitably the costs of such interconnection; and (c) each system is technically capable of interconnection with the other.

(d)    To the extent consistent with federal law, the Licensee's System shall have an emergency audio alert override system available to public safety officials responsible for emergency communications.

4.    **Public, Educational and Governmental Access Programming.**

To further the goals of public, educational and governmental access ("PEG Access") programming as defined in accordance with federal law, the Licensee shall:

(a)    enter into an agreement with Wakefield Community Access Television ("WCAT"), or its successor, substantially in the form attached as Exhibit 2;

(b)    pay into a restricted municipal grant account the following aggregate amounts upon the following schedule, subject to legal limits on the amount of franchise fees and in lieu of any franchise fees due to the Town pursuant to Massachusetts law:

(1)    A payment of $300,000 to be paid as follows:

(i)    $60,000.00 to be paid by Licensee upon the completion of construction of the System; and

(ii)   $60,000.00 to be paid by Licensee each year thereafter on the anniversary date of the initial payment until paid in full.

At the time of the execution of this License, Licensee and the Issuing Authority agree that the $300,000.00 scheduled capital funding commitment for public, education, and government access programming ("PEG") is significantly more burdensome to the Licensee than the funding commitment required of the cable operator under a predecessor renewal license granted on June 22, 1997. The determination of a more burdensome commitment is made by taking into consideration the time value of money and assessing Licensee's PEG capital commitment as a percentage of the projected aggregated gross revenues to be derived under this License, as compared with the PEG capital commitment of the incumbent cable operator as a percentage of projected aggregated gross revenues under its predecessor license.

Although the funding commitment of the Licensee is projected to be significantly more burdensome on this comparative basis, Licensee agrees that this is a minimum commitment. Furthermore, in the event that, based upon the actual aggregated gross revenues earned by Licensee, its PEG capital commitment of $300,000.00 taking into account the time value of money at current prime + 2 percent is, upon a review to be undertaken annually, is at any time less of a burden than that of the incumbent cable operator under such Operator's predecessor license relative to its actual gross aggregate revenues, then Licensee shall either increase its PEG capital commitment or accelerate its schedule of payments such that it has a PEG capital commitment equal to that of the incumbent cable operator when such commitment is expressed as a ratio of the PEG capital funding to aggregated gross revenue actually earned.

(c)    On or before March 1 of each year, a payment representing 4.5% of its annual gross revenues for operating funds, from the provision of cable television services in the preceding calendar year.

(d)    In the event that this License is not renewed or that the Licensee is no longer required by law to obtain a license from the Issuing Authority after the expiration date of this License, then, within 30 days after such date, the Licensee shall pay 4.5% of its gross revenue from January 1 of the year in which the License expires through the expiration date.

(e)    The foregoing payments are subject to the provision that all PEG Access programming produced in the Town with said funding shall be cablecast exclusively on one or more of the PEG channels on the Licensee's System in the Town unless permission otherwise is granted in writing by the Licensee, except that PEG Access programming produced in the Town may be made available to any other providers of video programming in the Town if such providers are obligated to pay into a restricted municipal grant account capital and operating grants equivalent to the foregoing.

(f)    The Licensee shall make available a total of three (3) downstream channels on the Subscriber Network for PEG Access use by the Wakefield Public Schools, WCAT or its successors, and the Town, respectively.  Licensee shall use its best efforts to carry the PEG channels on the same channel assignments as they are currently carried at the present time.

(g)    For purposes of this section, the term "gross revenues" shall mean consideration in any form or kind derived by the Licensee for the provision of cable services over the System within the Town including, without limitation, the distribution

of any cable service over the System, the provision of any service-related activity in connection with the operation of the System, basic service monthly fees, all other service fees, installation, reconnection, downgrade, upgrade and any similar fees, fees paid for channels designated for commercial use, converter and remote control rentals, leases or sales and advertising and home shopping revenues. Gross revenues shall not include: (1) any taxes on services furnished by the Licensee which are imposed upon any subscriber or use (as opposed to Licensee) by the Commonwealth of Massachusetts, Town or other governmental unit and collected by the Licensee on behalf of said governmental unit; (2) franchise fees paid by Licensee to the FCC, the State or the Town collected from subscribers unless otherwise allowed by applicable law; (3) programming revenues of any affiliate whose programming is carried on the System when such revenues are paid to said affiliate by the Licensee and recovered by the Licensee through charges to subscribers that are included in Gross Revenues; (4) to the extent consistent with generally accepted accounting principles ("GAAP"), adjustments to cash receipts and non-operating cash receipt for bad debts, refunds, credit adjustments, returned checks and asset sales when such sales do not occur in the ordinary course of business; and (5) revenues of any affiliate from the sale of merchandise or non-cable television or non-cable communications services, including subscriptions to periodicals, as a result of or due to advertising on the System.

5.    **Local Business Office**.

Licensee shall establish a convenient bill payment site(s) as an alternative to maintaining a local business office. Licensee intends to provide customer service support through its Boston, Massachusetts and Dallas, Pennsylvania offices.

6.    **Indemnification**

(a)    Licensee shall indemnify and hold the Town and its agents, harmless at all times during the term of this License from any and all claims alleged to be caused directly by or arising under Licensee's construction, installation, operation, or maintenance of any structure, equipment, wire or cable to be installed pursuant to the License or exercise of any of its rights under this License including the grant of this License by the Town. Upon receipt of notice in writing from the Town, the Licensee shall at its own expense defend any such actions or proceedings. Indemnified expenses shall include without limitation, all out-of-pocket expenses, such as attorney's fees.

(b)    In order for the Town to assert its rights to be indemnified, defended, or held harmless, the Town must:

(1)    promptly notify Licensee of any claim or legal proceeding which gives rise to such right;

(2)    afford the Licensee the opportunity to participate in and fully control any compromise, settlement or other resolution or disposition of such claim or proceeding, unless, however, the Town, in its sole reasonable discretion, determines that in its interests cannot be represented in good faith by the Licensee and further acceptance of any non-monetary settlement or term involving

injunctive relief or orders affecting the Town shall be subject to Town's consent;

and

      (3)    fully cooperate with the reasonable requests of the Licensee in its

participation in, and control, compromise, settlement or resolution or other

disposition of such claim or proceeding subject to subparagraph (2) above.

7.    **Performance Bond.**

The performance bond required by M.G.L. ch. 166A section 5(k) shall be in the

amount of $100,000.00, which may be reduced to $10,000.00 upon completion of the

System construction required by Section 3(a) or (b).

8.    **Determination of Breach.**

    (a)    In the event that the Issuing Authority has reason to believe that the

Licensee has defaulted in the performance of any provisions of this License, except as

excused by an event of force majeure (as hereinafter defined in paragraph (d) of this

provision) or other events beyond the reasonable control of the Licensee, the Issuing

Authority shall notify the Licensee in writing, by certified mail, of the grounds for such

belief. The Licensee shall have thirty (30) days from the receipt of such notice to:

    1.    contest in writing the Issuing Authority's assertion of default and

provide evidence to support the Licensee's position; or

    2.    cure any such default and provide written evidence of such cure;

or, in the event that such default is not capable of being cured within such 30 day

period, take reasonable steps to cure and diligently continue such efforts until said

cure is complete and  report to the Issuing Authority in writing by  certified mail,

at 14 day intervals as to the steps taken to cure said default and the progress of said cure.

(b)     In the event that the Licensee fails to make a timely response as provided above, the Issuing Authority shall promptly schedule a public hearing no sooner than 14 days after written notice has been sent by certified mail, to the Licensee. The Licensee shall be provided reasonable opportunity to offer evidence and be heard at such hearing. Within 30 days after such hearing, the Issuing Authority shall issue a written decision.

(c)     In the event the Issuing Authority determines after hearing that the Licensee is in default, the Issuing Authority may determine to pursue any lawful remedy available to it.

(d)     Unless further limited elsewhere in this License, the term "force majeure" as used herein shall have the following meaning: strikes; acts of God; acts of public enemies, orders of any kind of the government of the United States of America or of the Commonwealth of Massachusetts or any of their departments, agencies, political subdivisions, or officials, or any civil or military authority; insurrections; riots; epidemics; landslides; lightening; earthquakes; fires, hurricanes; volcanic activity; storms; floods; washouts; droughts; arrests; civil disturbances; explosions; partial or entire failure of utilities; or any other similar cause or event not reasonably within Licensee's control, which shall include the failure to perform the timely performance of walk-out, make-ready and location of aerial plant and underground utilities by all utilities and cable companies despite the best efforts of the Licensee.

9.    **Letter of Credit.**

(a)    In the event the Licensee: (1) does not have a sufficient record from which the Issuing Authority is reasonably capable of judging the Licensee's performance under prior cable television licenses or (2) is found to be in default pursuant to the foregoing section, the Issuing Authority may, at its discretion, require the Licensee to furnish an irrevocable letter of credit (the "Letter") in the amount of $10,000.00 in favor of the Issuing Authority.  Such Letter shall be in form reasonably acceptable to the Issuing Authority and shall secure the faithful compliance by the Licensee with this License and applicable law and the payment by the Licensee of any amounts due to the Town arising from the construction or operation of its System.

(b)    Within ten (10) days after any withdrawal against such Letter, the Licensee shall renew the letter to the full amount of $10,000.00.

10.    **Proceedings Upon Expiration or Revocation of License.**

In the event that this License is revoked and all appeals have been exhausted or that it expires and the Issuing Authority determines not to renew this License and all appeals have been exhausted, the Issuing Authority and the Licensee shall implement the provisions of 47 U.S.C. §547 by transferring the System to the Town or a subsequent licensee in accordance with such provision.

11.  **Term**.

This License shall be in effect for a period of ten (10) years from the date of issue.

TOWN OF WAKEFIELD
BY THE BOARD OF SELECTMEN

Wayne M. Tarr, Chairman

Kevin T. Haggerty

Peter G. Melanson

Linda A. ~~Swain~~ Sawin

John B. Encarnacao

RCN-BECOCOM, L.L.C.

By:

Scott Burnside
Title:   Sr. Vice President
         Regulatory & Government Affairs

WAKEFIELD COMMUNITY ACCESS
TELEVISION

By:

Title:

## Exhibit 1

### I-Net Drops and Outlets

| Building | Address |
|---|---|
| WCATV | 30 Converse Street |
| Greenwood Fire Station | 37 Crescent Street |
| Police Headquarters | 5 Oak Street |
| Woodville School | 1 Union Street |
| Montrose School | 30 Farm Street |
| Jr. High School | 531 Main Street |
| Greenwood School | 525 Main Street |
| Dobeare School | 1030 Main Street |
| Yeuell School | 340 Lowell Street |
| Walton School | 18 Davidson Road |
| High School | 60 Farm Street |
| High School Softball Field | |
| Doyle School | 11 Paul Avenue |
| Atwell School | 525 Main Street |
| Lake Quannapowitt | Lake Avenue/Church Street |
| | |
| Main Library | Main Street |
| Little Red School House | 39 Prospect Street |
| St. Joseph School | 15 Gould Street |
| Town Hall | 1 Lafayette Street |
| Franklin School | Franklin Street |
| Northeast Regional Vocational | Nahant Street |
| Nazareth Academy | Jordan Avenue |
| Newbury Junior College Extension | |
| Lincoln School/Senior Center | Otis Street |
| Fisher Junior College Extension | Jordan Avenue |
| American Civic Center | Armory Street |
| Beebe Library | Avon Street |

### Additional Sites:
Melrose/Wakefield Hospital

# EXHIBIT 2

## Agreement By and Among

## Wakefield Community Access Television ("WCAT")

## RCN-BecoCom, L.L.C. ("Licensee")

## and

## Town of Wakefield Board of Selectman ("Issuing Authority")

## (the "Agreement")

**Section 1     Organization and Authority**

WCAT shall be organized as a non-profit corporation in accordance with the General Laws of Massachusetts, as amended. WCAT shall direct its activities to the development and promotion of public access ("Access") programming as defined in accordance with federal law.

**Section 2     Capital Funds and Annual Operating Funds: Schedule of Payments**

(a)     To further the goals of Access programming, the Licensee shall pay into a restricted municipal grant account the following aggregate amounts, subject to legal limits on the amount of franchise fees:

(1)     For capital and unrestricted cable-related expenditures, a one-time payment of $300,000 to be paid as follows: (i) $60,000.00 to be paid by Licensee upon the completion of construction of the System; and (ii) $60,000.00 to be paid by Licensee each year thereafter until paid in full.

(2)     For operating funds, annually on or before March 1, 4.5% of its annual gross revenues from the provision of cable television services in the preceding calendar year, except that in the event that its License is not renewed or that the Licensee is no longer required by law to obtain a License from the Issuing Authority after the expiration date of this current License then, within 30 days after such date, the Licensee shall pay 4.5% of its gross revenues from January 1, of the year in which the License expires through the expiration date. For purposes of this section, the term "gross revenues" shall have the meaning given it in the Non-Discretionary Cable Television License dated _____, 1998 between the Issuing Authority and Licensee.

(b)    The Issuing Authority shall be responsible for the allocation of the funds in the restricted municipal grant account. The Licensee's obligations shall be satisfied by payment of the aggregate amounts specified in subsection (a) above.

(c)    Any payments to WCAT shall be used only to support the operation and utilization of Access programming on the Wakefield Access channels and may include, but is not limited to, such items as equipment, salaries of personnel associated with Access programming, rent, telephone and other reasonable administrative costs.

## Section 3    Channel Capacity

The Issuing Authority shall make available to WCAT one downstream channel on the subscriber network and two (2) upstream channels on the I-Net for public access use.

## Section 4    System Maintenance of Access Channels

The Licensee shall monitor the public access channels for technical quality and shall ensure that it is maintained at standards commensurate with those applicable to the Licensee's commercial channels in the Town of Wakefield; provided, however, that nothing in this section guarantees the technical quality of access users' production. The operation of the channels provided to WCAT pursuant to this Agreement and the operation and maintenance of the equipment acquired by WCAT shall be its sole responsibility.

## Section 5    Public Access Use:  Operation Rules and Procedures

WCAT shall be solely responsible for the management and operation of Access programming on the cable system in the Town, including training, quality of originated signals, scheduling the Access channels and managing the Access facilities and equipment. WCAT shall, within six (6) months following the execution of this Agreement, promulgate a set of access operating rules and procedures which ensure that training, equipment, facilities and access channel time available to Wakefield residents, institutions, educational organizations, and the municipal government servicing the Town. These rules shall ensure the right to sue the designated channels, facilities and equipment on a non-discriminatory, first-come, first-served basis subject to the terms of this Agreement. Access user compliance with such rules shall be monitored by WCAT and periodically reviewed by the Issuing Authority.

## Section 6    Coverage of Local Meetings

WCAT shall be solely responsible for providing live coverage of regularly scheduled Board of Selectmen and School Committee meetings. Upon reasonable notice from the Issuing Authority, WCAT shall also provide coverage of special meetings of the Board of Selectmen and School Committee meetings to the extent that WCAT shall also

provide coverage of Town Meetings. Under no circumstances shall Licensee be required to provide coverage of local meetings.

**Section 7    Indemnification**

WCAT shall at its sole cost and expense indemnify and hold harmless the Licensee against any and all claims or judgments on the property of WCAT. WCAT shall, in its rules for Access use, require every access user to indemnify both the Licensee and WCAT and hold each of them harmless against any clams arising out of any program or program material produced and/or cablecast, including but not limited to claims in the nature of libel, slander, invasion of privacy or publicity rights, obscenity or indecency, non-compliance with applicable laws, license fees and unauthorized use of copyrighted material.

**Section 8    Insurance**

(a)    WCAT shall carry insurance indemnifying the Licensee, the Town of Wakefield, their officers, agents, and itself from and against, any and all claims and liability for injury or damage to persons or property due to risk or peril caused by the use of Access equipment or facilities managed by WCAT and shall name both Licensee and the Town of Wakefield as additional insured. Such insurance coverage shall not be less than one million dollars ($1,000,000.00) for personal injury or death to any one person or property damage resulting from any one occurrence. WCAT shall ensure its equipment for theft, loss and damage.

(b)    The insurance policy required under paragraph (a) above shall contain the following endorsement:

Wakefield/RCN-BecoCom, L.L.C. Access Agreement

It is hereby understood and agreed that this policy shall not be canceled or materially changed until thirty (30) days after receipt by the Town of Wakefield and Licensee, by certified mail, of one (1) copy of a written notice of such intent.

**Section 9    Editorial Control**

WCAT shall be responsible for programming the Access channels. Neither the Issuing Authority nor the Licensee shall engage in program censorship or any other editorial control of the content of Access programming on the Access channels, except as otherwise required or permitted by applicable law.

**Section 10    Informational and Annual Reports**

WCAT shall provide a written report of its finances and operations to the Issuing Authority and the Licensee for the previous calendar year by July 15 of each year. At any

time during the term of this agreement, upon the reasonable request of the Issuing Authority or the Licensee, WCAT shall provide such further information as may be reasonably requested to document the content and purpose of the expenditure of funds.

WITNESS OUR HAND AND OFFICIAL SEALS, THIS ___3th___ DAY OF __March,_____, 1999.

TOWN OF WAKEFIELD
BY THE BOARD OF SELECTMEN

_Wayne M. Tarr_
Wayne M. Tarr, Chairman

_Kevin T. Haggerty_
Kevin T. Haggerty

_____
Linda A. Swain

_Peter G. Melanson_
Peter G. Melanson

_John B. Encarnacao_
John B. Encarnacao

WAKEFIELD COMMUNITY ACCESS
TELEVISION

By: _James Mense_

RCN-BECOCOM, L.L.C.

By:_____
Michael J. Mahoney
President and Chief Operating Officer

18

Authority or the Licensee, WCAT shall provide such further information as may be reasonably requested to document the content and purpose of the expenditure of funds.

WITNESS OUR HAND AND OFFICIAL SEALS, THIS _____ DAY OF _____, 1999.

TOWN OF WAKEFIELD
BY THE BOARD OF SELECTMEN

_____
Wayne M. Tarr, Chairman

_____
Kevin T. Haggerty

_____
Linda A. Swain

_____
Peter G. Melanson

_____
John B. Encarnacao

WAKEFIELD COMMUNITY ACCESS
TELEVISION

By: _____

RCN-BECOCOM, L.L.C.

By: _____
Scott Burnside
Sr. Vice President
Regulatory & Government Affairs

11.   **Term**.

This License shall be in effect for a period of ten (10) years from the date of issue.

TOWN OF WAKEFIELD
BY THE BOARD OF SELECTMEN

_Wayne M. Tarr_
Wayne M. Tarr, Chairman

_Kevin T. Haggerty_
Kevin T. Haggerty

_Peter G. Melanson_
Peter G. Melanson

_____
Linda A. Swain

_____
John B. Encarnacao

RCN-BECOCOM, L.L.C.

By: _Scott Burnside_
      Scott Burnside
Title:  Sr. Vice President
         Regulatory & Government Affairs

WAKEFIELD COMMUNITY ACCESS
TELEVISION

By: _James Mercer_

Title: _Secretary_

Authority or the Licensee, WCAT shall provide such further information as may be reasonably requested to document the content and purpose of the expenditure of funds.

WITNESS OUR HAND AND OFFICIAL SEALS, THIS _____ DAY OF _____, 1999.

TOWN OF WAKEFIELD
BY THE BOARD OF SELECTMEN

Wayne M. Tarr, Chairman

Kevin T. Haggerty

Linda A. Swain

Peter G. Melanson

John B. Encarnacao

WAKEFIELD COMMUNITY ACCESS
TELEVISION

By: _____

RCN-BECOCOM, L.L.C.

By: _____
    Scott Burnside
    Sr. Vice President
    Regulatory & Government Affairs

11. **Term**.

This License shall be in effect for a period of ten (10) years from the date of issue.

TOWN OF WAKEFIELD
BY THE BOARD OF SELECTMEN

_Wayne M. Tarr_
Wayne M. Tarr, Chairman

_Kevin T. Haggerty_
Kevin T. Haggerty

_Peter G. Melanson_
Peter G. Melanson

_____
Linda A. Swain

_____
John B. Encarnacao

RCN-BECOCOM, L.L.C.

By: _Scott Burnside_
    Scott Burnside
Title:  Sr. Vice President
        Regulatory & Government Affairs

WAKEFIELD COMMUNITY ACCESS
TELEVISION

By: _James Meuse_
Title: _secty_

11. **Term**.

This License shall be in effect for a period of ten (10) years from the date of issue.

TOWN OF WAKEFIELD
BY THE BOARD OF SELECTMEN

_____
Wayne M. Tarr, Chairman

_____
Kevin T. Haggerty

_____
Peter G. Melanson

_____
Linda A. Swain

_____
John B. Encarnacao


RCN-BECOCOM, L.L.C.

By: _____
        Scott Burnside
Title:   Sr. Vice President
        Regulatory & Government Affairs

WAKEFIELD COMMUNITY ACCESS
TELEVISION

By: _____

Title: _____

Authority or the Licensee, WCAT shall provide such further information as may be reasonably requested to document the content and purpose of the expenditure of funds.

WITNESS OUR HAND AND OFFICIAL SEALS, THIS _____ DAY OF _____, 1999.

TOWN OF WAKEFIELD
BY THE BOARD OF SELECTMEN

_Wayne M. Tarr_
Wayne M. Tarr, Chairman

_Kevin T. Haggerty_
Kevin T. Haggerty

_____
Linda A. Swain

_Peter G. Melanson_
Peter G. Melanson

_____
John B. Encarnacao

WAKEFIELD COMMUNITY ACCESS TELEVISION

By: _James Meuse_

RCN-BECOCOM, L.L.C.

By: _Scott Burnside_
Scott Burnside
Sr. Vice President
Regulatory & Government Affairs

# BOARD OF SELECTMEN
## OF THE
## TOWN OF WAKEFIELD, MASSACHUSETTS

Decision of Issuing Authority
Concerning Default of Cable Television Licensee

December 8, 2003

Background:

The Board of Selectmen of the Town of Wakefield, Massachusetts is identified as the issuing authority (the "Issuing Authority") in that certain Cable Television Final License dated March 9, 1999 (the "License") granted to RCN-BecoCom, LLC (the "Licensee"). By letter dated January 16, 2003, the Issuing Authority gave notice to the Licensee pursuant to § 8(a) of the License that the Issuing Authority had grounds to believe that the Licensee had defaulted in the performance of certain of its obligations under the License. By letter dated November 3, 2003, the Issuing Authority gave notice to the Licensee pursuant to § 8(b) of the License that (a) in the opinion of the Issuing Authority, the Licensee had failed to resolve issues set forth in the prior notice and (b) a public hearing would be held to determine whether the Licensee should be declared in default. Such a hearing was held at 8:00 p.m. on Monday, November 24, 2003 in the first floor conference room of the William J. Lee Memorial Town Hall, One Lafayette Street, Wakefield, Massachusetts. The Licensee was represented at the hearing by Thomas K. Steel, Jr., Vice President and Regulatory Counsel; Robert Sheehan, Vice President and General Manager; and John Aldrich, Director of Engineering.

Issues:

1. Is the Licensee in default for having failed to construct "a modern residential cable television system with a capacity of not less than 750 megahertz" and to

offer cable service thereby to all residential dwellings in the Town of Wakefield (the "Town"), as required by § 3(a) of the License?

2.    Is the Licensee in default for having failed to install an institutional network (the "I-Net"), as required by § 3(b) of the License?

Discussion:

1.    System Construction and Offer of Service.

Under § 3(a) of the License, "[t]he Licensee shall have a period of eighteen (18) months in which to construct a modern residential cable television system with a capacity of not less than 750 megahertz". The said 18-month period "shall commence when all necessary permits and approvals are granted by the Wakefield Municipal Light Plant". In lieu of issuing discrete permits and approvals, the Wakefield Municipal Gas & Light Department (the "WMGLD") entered into a "Construction and Indefeasible Right to Use Agreement" with the Licensee dated July 10, 2000. The construction period accordingly expired eighteen months after execution of the said agreement on January 10, 2002. Also under § 3(a) of the License, the Licensee is obligated within three months after expiration of the aforesaid eighteen-month period "to offer cable service to any residential dwelling in the Town". The said three-month period expired on April 10, 2002.

According to the Licensee, the 2000 Census identified 9,937 residential addresses in the Town. Of these, the Licensee characterizes 8,122 as "install-ready," meaning that a resident at such an address may access the Licensee's cable services simply by calling the Licensee to schedule installation. There are, then, 1,815 addresses that are not install-ready. The Licensee explained that of the non-install-ready addresses, 487 fall into the category of "cold nodes" and 1,328 are in "cold pockets" within "activated nodes." The

2

Licensee explained its plans to activate two cold nodes (numbers 27 and 65) in the near future, which should have the effect of reducing the number of addresses subject to cold nodes from 487 to 282. Of the 1,328 cold pocket addresses, the Licensee stated that it has identified 678 which belong to multiple dwelling units and which the Licensee expects to be able to reach soon, which would leave 650 cold pocket addresses. In total, then, the Licensee has plans to reduce the non-install-ready addresses from a total of 1,815 to 932 in the near term. The Licensee explained that those 932 addresses are almost all located on cul-de-sac streets in which the utilities are underground. Accessing those addresses would be uneconomic, according to the Licensee. The Licensee has no current plans for reaching those 932 residential addresses.

According to the Licensee's own numbers, almost 20 months after the Licensee's cable services should have been made available to all residences in the Town, (a) the residents at more than 18% of addresses in the Town are unable to access the Licensee's services, and (b) more than 9% of the residential addresses in the Town will remain inaccessible even if the Licensee accomplishes all of its planned construction.

The Issuing Authority is not indifferent to the claim by the Licensee that the expense of reaching the last 9% of addresses within the Town may prove expensive. However, that was a foreseeable expense at the time the License was negotiated and issued. Just as the Selectmen demand full performance from construction contractors who work for the Town even if the final stage of such performance may be disproportionately expensive, so the Issuing Authority believes that it must demand full performance by the Licensee. Any hardship that may exist has been amply ameliorated by the patience which the Issuing Authority has shown in staying its hand for more than a

3

year and a half after the completion date set forth in the License; had the Licensee seriously devoted itself to reaching all of the residential addresses in Town, it had plenty of time to spread out the cost of doing so. Moreover, the Licensee continues to expand its service elsewhere even as it asserts an inability to meet its pre-existing contractual obligations here. More than four and half years after issuance of the License, the Licensee has undertaken to build a cable television system in the neighboring Town of Stoneham while more than 18% of the homes in Wakefield remain unable to receive the Licensee's services. Further, the Issuing Authority is cognizant of its duty to provide a "level playing field" for the Licensee and its competitor within the Town, Comcast. If the Issuing Authority waives material terms of the License for the benefit of the Licensee, corresponding concessions will likely be sought by the Town's other cable licensee. Finally, those who live at the 9% of addresses which may never receive the Licensee's services are no less deserving than the people who live at remaining 91%. The Issuing Authority, elected by and accountable to all of the people of the Town, cannot abandon any residents but rather must insist that the bargained-for benefits of the License be extended to all.

For the reasons set forth above, the Issuing Authority determines that the Licensee is in default for having failed to comply with its obligations to build out fully a residential cable television system and to offer cable services to all residential dwellings in the Town under § 3(a) of the License.

2.    I-Net. The License defines the cable television system that is to be offered to all residents of the Town within a total of twenty-one months from the grant of permits and approvals by the WMGLD as the "System". See § 3(a). It goes on in § 3(b) to

4

provide: "The Licensee's System or separate institutional network (the 'I-Net') shall be capable of transmitting to the Town, audio, video and data to the sites listed in Exhibit 1." The said exhibit identifies twenty-eight sites to be so serviced. Thus by April 10, 2002, the Licensee was to complete a System or an I-Net linking twenty-eight different sites.

The Licensee has failed to complete the I-Net. However, the Licensee presented testimony demonstrating a good faith effort to reach completion. In addition, the Licensee has used fiber optic cable rather than co-axial cable in the portions of the I-Net that have been completed. This choice, which was not dictated by the License and which entailed greater expense for the Licensee, has made the I-Net a better vehicle for video and data transmission. Without waiving any provisions of the License, including § 3(b) requiring the Licensee to complete the I-Net, the Issuing Authority determines not to find the Licensee in default at this time for failing to have completed the I-Net, but expressly reserves the right to find the Licensee in default in the future if the Licensee fails within a reasonable time perform its obligations with respect to the I-Net.

Conclusion:

The Issuing Authority determines that the Licensee is in default under § 3(a) of the License, as set forth above, and hereby authorizes and directs the Town Counsel and other relevant Town officials to take any and all action necessary or appropriate to cure the default including, without limitation, proceeding to exercise any and all rights that are available to the Issuing Authority under the performance bond which was provided by the Licensee pursuant to § 7 of the License and the letter of credit supplied by the Licensee under § 9 thereof, and seeking specific performance and/or damages through a civil action.

5

BOARD OF SELECTMEN
OF THE TOWN OF WAKEFIELD

_[signatures]_

c:\Wakefield\RCNDecision